UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **CHARKEIA SHANNON,**  Plaintiff,  vs.  **MICHIGAN DEPARTMENT OF CORRECTIONS,**  Defendant. | 2:23-CV-10995-TGB-APP  HON. TERRENCE G. BERG  **ORDER DENYING PLAINTIFF'S PRO SE MOTION TO RECONSIDER SETTLEMENT AND MOTION TO APPEAL**  **(ECF NO. 21)** |

Charkeia Shannon, represented by counsel, brought this employment discrimination case against her former employer, the Michigan Department of Corrections ("MDOC"). In January 2025, the parties reached a mediated settlement, executed a binding Settlement Agreement, and the case was dismissed with prejudice. Approximately two months later, Shannon, now proceeding pro se, now moves for reconsideration of the parties' settlement and to appeal. ECF No. 21. The MDOC filed a response in opposition. ECF No. 22. Upon review of the parties' filings, the Court concludes oral argument will not aid in the resolution of this matter. Accordingly, the Court will resolve the present motion on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons stated below, Shannon's Motion to Reconsider Settlement and Motion to Appeal will be **DENIED.**

## I. BACKGROUND

Charkeia Shannon, then represented by attorney Eric Stempien, brought this employment discrimination case against Defendant Michigan Department of Corrections ("MDOC"), alleging discrimination and retaliation claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, and the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*. ECF No. 1. The parties eventually reached a settlement with the assistance of mediator Kathy Bogas, executed a binding Settlement Agreement on January 8, 2025, and on January 16, 2025, the Court entered a Stipulation and Order of Dismissal, dismissing the case with prejudice and without costs. ECF No. 20. That Order stated that "[t]he Parties further stipulate and agree that the Court will retain jurisdiction over this matter through April 8, 2025 in order to enforce the terms of the parties' settlement." *Id*. PageID.98.

The Settlement Agreement released and discharged all claims Shannon had or may have against the MDOC and the State of Michigan through the date of signing the Agreement in exchange for monetary consideration in the amount of $19,500.00. Settlement Agreement and Release, ECF No. 22-1. The Agreement provided that payment in the amount of $8,750.00 will be paid to Shannon, $5,750.00 will be paid to "Stempien Law, PLLC," and $5,000.00 will be assigned to the redemption of Shannon's worker's compensation claim, if any. *Id*. PageID.119–20, ¶¶ 2.1.1–2.1.3. To receive payment, the Agreement required both

Shannon and her attorney to first register as a vendor on the Michigan Statewide Integrated Government Management Application ("SIGMA") System, after which payment would be issued. *Id.* The Agreement also required Shannon to file and redeem any workers compensation claim she has or may have arising out of her employment with the State of Michigan. *Id.* PageID.116–17, ¶ 1.10. In addition, under the Agreement, Shannon agrees that she will not seek or accept employment with the State of Michigan, *id.* PageID.117, ¶ 1.11, and the State of Michigan and the United States Department of Treasury are empowered to exercise any right of set-off to which they are entitled by law. *Id.* PageID.122, ¶ 6.1. Finally, Shannon affirmatively represented that she "has read this Agreement carefully and understands all terms, conditions, and responsibilities," that she "enters into this Agreement voluntarily and with the advice of counsel," and that she "has the capacity to execute this Agreement and its releases." *Id.* PageID.122–23, ¶¶7.1–7.4.

About two months after executing the Settlement Agreement, Shannon, now proceeding pro se, brought the instant motion for reconsideration of the settlement and to appeal. ECF No. 21. She questions why the Settlement Agreement requires her to complete a redemption for a worker's compensation claim when she was not physically injured on the job. *Id.* PageID.100–01. Shannon further complains that deductions were made from the settlement proceeds by the Department of Treasury, and about the provision in the Agreement

3

that she would not apply for or accept employment with the State of Michigan. *Id.* PageID.101–02. She also generally complains about her attorney's representation of her in this litigation and contends that she experienced "undue pressure and coercion" by her attorney to sign the Settlement Agreement. *Id.*

Defendant MDOC filed a response in opposition to Shannon's motion. ECF No. 22. The MDOC explained that because Shannon alleges she suffered emotional distress damages from her employment, the State of Michigan's standard procedure is to allocate a portion of a monetary settlement proceeds towards a worker's compensation redemption. However, upon filing the redemption paperwork with the Worker's Compensation Bureau, and there being no claim, Shannon will receive the $5,000.00. *Id.* PageID.106–07. The MDOC further stated that it is standard practice to pay legal settlements handled by the state Attorney General's Office through the Michigan Department of Treasury, and the Treasury Department has an obligation to collect any outstanding debts or obligations owed by the payee when making these payments. *Id.* PageID.107. In addition, the MDOC states that it is common practice to require as a condition of payment that the payee agree not to seek or accept future employment with the State. *Id.* PageID.108.

4

## II. LEGAL STANDARD

The Court of Appeals for the Sixth Circuit has long recognized the broad, inherent authority and equitable power of a district court to enforce an agreement in settlement of litigation pending before it. *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001); *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000). Courts may enforce a settlement agreement "even where the agreement has not been arrived at in the presence of the court nor reduced to writing." *Kukla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 621 (6th Cir. 1973); *see also Henley v. Cuyahoga Cnty. Bd. of Mental Retardation & Developmental Disabilities*, 141 F. App'x 437, 442 (6th Cir. 2005). Nevertheless, "[b]efore enforcing settlement, the district court must conclude that agreement has been reached on all material terms. The court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement." *Brock v Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988) (internal citations omitted). "Whether the parties actually reached an agreement is a question of fact for the district court," *Moore v. U.S. Postal Serv.*, 369 F. App'x 712, 717 (6th Cir. 2010), which is governed by state contract law, *Cuyahoga Valley Ry. Co. v. U.S. Bank Trust Nat'l Ass'n*, 515 F. App'x 494, 498 (6th Cir. 2013) ("Because settlement agreements are a type of contract, the formation and enforceability of a purported settlement agreement are governed by state contract law.").

Under Michigan law, "[b]efore a contract can be completed, there must be an offer and acceptance. Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed. Further, a contract requires mutual assent or a meeting of the minds on all the essential terms." *Kloian v. Domino's Pizza, LLC*, 733 N.W.2d 766, 770 (Mich. Ct. App. 2006) (citation modified). Determining whether there was mutual assent between the parties "is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind," *Tillman v. Macy's Inc.*, 735 F.3d 453, 459 (6th Cir. 2013), which requires consideration of the "relevant circumstances surrounding the transaction, including all writings, oral statements, and other conduct by which the parties manifested their intent." *Innotext, Inc. v. Petra'Lex USA Inc.*, 694 F.3d 581, 589 (6th Cir. 2012); *see also Huntington Nat'l Bank v. Daniel J. Aronoff Living Trust*, 853 N.W.2d 481, 488 (Mich. Ct. App. 2014) ("Courts judge whether there was a meeting of the minds from objective evidence.").

"As a general rule, settlement agreements are 'final and cannot be modified.'" *Clark v. Al-Amin*, 872 N.W.2d 730, 736 (Mich. Ct. App. 2015) (quoting *Smith v. Smith*, 823 N.W.2d 114, 116 (Mich. Ct. App. 2011)). Thus, "a party cannot void a settlement agreement merely because he has had a change of heart, nor can he do so merely because his assessment of the consequences of the settlement was incorrect." *Id.* (citation modified).

## III. DISCUSSION

First, the Court finds that the parties have reached a valid, binding Settlement Agreement based on "the expressed words of the parties and their visible acts." *Huntington Nat'l Bank*, 853 N.W.2d at 488 (citation omitted). Under Michigan's substantive law, a contract exists in this case because the parties reached an agreement on material terms of the settlement and Shannon unequivocally accepted the offer when she signed the Settlement Agreement. *See id.* The Settlement Agreement comprehensively sets forth the terms of the agreement in easy-to-understand language, and Shannon expressly agreed that she "has read this Agreement carefully and understands all terms, conditions, and responsibilities," that she "had the opportunity to consult with legal counsel for the purpose of reviewing the terms of this Agreement," and that she "has the capacity to execute this Agreement and its releases." ECF No. 22-1, PageID.122–23, ¶¶ 7.1–7.4.

Having found that Shannon entered into a valid contract, Michigan law is clear that a settlement agreement between parties is "final and cannot be modified." *Smith*, 823 N.W.2d at 116. Most importantly to this case, it cannot be avoided merely because one party "has had a 'change of heart,'" *Vittiglio v. Vittiglio*, 824 N.W.2d 591, 595 (Mich. Ct. App. 2012), or "did not understand" the Agreement. *Thomas v. Holy Cross Servs., Inc.*, No. 2:23-CV-12843, 2024 WL 4794502, at *3 (E.D. Mich. Nov. 14, 2024) (DeClercq, J.).

Shannon principally complains that the Settlement Agreement required that $5,000 of the settlement proceeds be allocated to a redemption of a potential worker's compensation claim, stating she does not understand why she would file such a claim when she was not physically injured and has not been employed with the MDOC since 2021. ECF No. 21, PageID.100–01. This complaint does not bar enforcement of the Settlement Agreement. Under the parties' Settlement Agreement, which Shannon expressly agreed she read and understood, Shannon "agrees to file and redeem any workers compensation claim which she has, or may have in the future, arising out of her employment as an employee of the State of Michigan," and that $5,000 of the total $19,500 settlement amount will be assigned to the redemption of Shannon's worker's compensation claim and "shall be paid after the payment of the statutory redemption period." ECF No. 22-1, PageID.116, 118, ¶¶ 1.10, 2.1.3.

The MDOC explains the reasoning for this provision in its Response brief. Because Shannon alleged she suffered emotional distress damages from her employment, the State of Michigan's standard settlement procedure is to allocate a small portion of the settlement proceeds–here, $5,000—towards a worker's compensation redemption, as such damages could be considered a workplace injury. ECF No. 22, PageID.106–07. If Shannon received workers' compensation benefits, then she would need to reimburse the State of Michigan for those benefits from the $5,000

assigned from the settlement proceeds, so that she does not receive a double recovery for that claimed injury. However, if the redemption order confirms that Shannon did not receive any workers' compensation benefits, she will receive the full $5,000. The MDOC further explains that this is a simple process involving minimal documentation to be filed with the Worker's Compensation Bureau, and that the Attorney General's office can provide the name and contact information of an Assistant Attorney General who specializes in worker's compensation matters to help facilitate the process. *Id*. Shannon may contact the Assistant Attorneys General in this case to obtain that name and contact information.

Accordingly, Shannon is required, as part of the Settlement Agreement, to file redemption paperwork with the Michigan Worker's Compensation Bureau, and the Court may not modify the final Settlement Agreement to alter or eliminate that requirement. *See Clark*, 872 N.W.2d at 736. Shannon's claimed confusion over this provision does not bar its enforcement. *See Farm Bureau Mut. Ins. Co. of Mich. v. Buckallew*, 690 N.W.2d 93, 93 (Mich. 2004) (mem.) (ignorance of or a mistake in understanding an agreed-upon contract is not a basis for relief from the same, and a party is not "excused by its own carelessness or lack of due diligence").

Shannon also complains that the Department of Treasury made a deduction from her settlement payment. As explained above, the terms

9

of the Settlement Agreement required Shannon to register as a vendor on Michigan's SIGMA System to receive the $8,750 settlement payment. ECF No. 22-1, PageID.119, ¶ 2.1.1. Shannon states that after she registered with SIGMA, the Michigan Department of Treasury deducted $2,944.60 of the $8,750 settlement payment as a set-off for a debt Shannon owed the State of Michigan. ECF No. 21, PageID.102. While Shannon contends that "one of [her] debts" in an unspecified amount was for some reason exempt from offset, that contention does not bar enforcement of the parties' Settlement Agreement. The Settlement Agreement expressly provides that "[t]he State of Michigan and the United States Department of Treasury are empowered to exercise any right of set-off to which they are entitled by law." ECF No. 22-1, PageID.122, ¶ 6.1. The Court may not modify this final Settlement Agreement to alter or eliminate that unambiguous requirement. *See Clark*, 872 N.W.2d at 736.

Similarly, Shannon's apparent disagreement the provision in the parties' Settlement Agreement that she is not permitted to seek employment with the State of Michigan does not bar enforcement of the Settlement Agreement. The Settlement Agreement expressly provides that "Shannon agrees that she will not seek or accept employment with the State of Michigan." ECF No. 22-1, PageID.117, ¶ 1.11. That negotiated provision is not "retaliatory" as Shannon contends, and she

cannot seek to renegotiate that provision out of the Settlement Agreement now. *See Clark*, N.W.2d at 736.

Finally, Shannon generally contends that there was "undue pressure and coercion" by her attorney to sign the Settlement Agreement, and that her consent was "not freely given as [she] was at work during a lunch break at the time of the [settlement] negotiations." ECF No. 21, PageID.101. She states that she was initially unwilling to sign the Settlement Agreement because she disagreed with it, but her attorney said that he would no longer represent her if she did not sign. *Id.* PageID.103.[1] Shannon's general complaints fail to satisfy the exacting standard of duress necessary to set aside a binding settlement agreement. Duress involves an "unlawful or wrongful act or threat that overcomes the free will of the victim." *Gascho v. Scheurer Hosp.,* 400 F. App'x 978, 982 (6th Cir. 2010); *see also Harvard Drug Group, LLC v. Linehan,* 684 F. Supp. 2d 921, 926 (E.D. Mich. 2010) (Roberts, J.) ("Duress requires compulsion or coercion by which one is illegally forced to act by fear of serious injury to person, reputation or fortune.") (internal quotation marks and citation omitted); *Hackley v. Headley,* 8 N.W. 511,

---

[1] Shannon also generally complains about her attorney's pretrial and pre-settlement conduct and strategy, such as the scheduling of depositions and the stipulated dismissal of her Family and Medical Leave Act ("FMLA") claims. ECF No. 21, PageID.101–02. However, these allegations in no way demonstrate duress or coercion in entering the Settlement Agreement.

11

512–13 (Mich. 1881) ("Duress exists when one by the unlawful act of another is induced to make a contract or perform some act under circumstances which deprive [her] of the exercise of free will.").

Here, Shannon has not proffered any argument that she was ever threatened in such a way that overcame the exercise of her free will to execute the Settlement Agreement. Shannon was represented by counsel and the parties settled the case with the assistance of a neutral mediator. *McCormack v. City of Westland, Mich.*, No. 18-2135, 2019 WL 4757905, at *3 (6th Cir. Apr. 15, 2019) ("Given that McCormack was represented by counsel and the parties settled the case with the district court's participation and guidance, her argument that the agreements are unenforceable due to duress, coercion, fraud, and mistake is not only unconvincing, but refuted by the record.") (citing *Clement v. Buckley Mercantile Co.*, 137 N.W. 657, 660 (Mich. 1912) ("The law does not recognize duress by mere suggestion, advice, or persuasion, especially where the parties are at arm's length and represent opposing interests.")). That Shannon was at work during a lunch break at the time of the settlement negotiation in no way establishes duress or coercion to sign the Settlement Agreement when it was presented to her.

And her claim that her attorney told her he would no longer represent her if she did not sign the Settlement Agreement also fails to establish duress or coercion under Michigan law. *See Rusiecki v. City of Marquette*, 64 F. App'x 936, 938 (6th Cir. 2003) ("The fact that Rusiecki

may have changed his mind about the settlement is insufficient to justify reopening, as is a threat from Rusiecki's attorney to withdraw representation.") (internal citation omitted); *see also Murdock v. Trinity Servs. Grp.*, No. 17-11803, 2020 WL 5596158, at *1 (E.D. Mich. Sept. 18, 2020) (Levy, J.) (plaintiff's contention that "he 'never was comfortable with any settlement agreement that has been forced on [him] by [his] attorney[]s,' that he 'told my attorney[]s on the recorded phone calls that [he] want[s] to go to trial in this matter,' and that he 'truly believe[s] that [he] ha[s] been misle[]d, and lied to just in order to push this case on'" is insufficient to establish duress or coercion to set aside a stipulated dismissal and settlement agreement). Rather, under Michigan law, "the requirements for setting aside a settlement agreement … require[e] a showing of bad faith on the part of Defendants' attorneys in addition to Plaintiff's[.]" *Murdock*, 2020 WL 5596158, at *1; *see also Kimball v. Crowley*, No. 320139, 2014 WL 3928807, at *2 (Mich. Ct. App. Aug. 12, 2014) ("When a party to an agreement argues that consent was achieved 'through duress or coercion practiced by her attorney, the judgment will not be set aside absent a showing that the other party participated in the duress or coercion.'") (quoting *Vittiglio,* 824 N.W.2d at 596–97). In *Kimball*, the Michigan Court of Appeals noted that the "plaintiff argues only that her attorney induced her agreement to the stipulation; she offers no evidence, and makes no argument, to suggest that defendant played any role in her purported duress," and held that "[o]n these facts,

13

plaintiff has not made a showing of duress which would warrant the setting aside of her stipulation." *Kimball*, 2014 WL 3928807, at *2. Shannon here makes no contention that counsel for the MDOC played any role in her alleged duress, and in fact asserts that she "did NOT speak to, nor see [via Zoom] the Attorney General at any time during the mediation conference meeting." ECF No. 21, PageID.101 (capitalization in original).

"[P]ublic policy favors settling cases without litigation, and settlement agreements should be upheld whenever it is equitable to do so." *Rusiecki*, 64 F. App'x at 938. Here, the MDOC states that all "funds have been disbursed, and Shannon need only go through the worker's compensation redemption process to access the remaining portion of [the] settlement proceeds as she previously agreed to do." ECF No. 22, PageID.108. In reading Shannon's motion, the Court can see that, in looking back, she feels that the settlement itself and the process that led to it was not fair to her. While this is unfortunate, the law must enforce agreements and contracts such as this even when parties who have agreed to them later change their minds or upon reflection wish they had not made such agreements. Such agreements are legally binding. The Court therefore finds that it is equitable to uphold the parties' negotiated settlement in this case. Accordingly, Shannon's motion for reconsideration of the parties' Settlement Agreement will be **DENIED.**

14

And finally, Shannon's motion to extend time to appeal will be denied. A notice of appeal was required to be filed within 30 days after the entry of the Court's order dismissing this case, Fed. R. App. P. 4(a)(1)(A), or by February 15, 2025, and it was not. Federal Rule of Appellate Procedure 4(a)(5)(A) states that "[t]he district court may extend the time to file a notice of appeal if [ ] a party so moves no later than 30 days after [the time to appeal] expires" and if the "party shows excusable neglect or good cause."[2] "Good cause will be found where forces beyond the control of the [petitioner] prevented her from filing a timely notice of appeal." *Nicholson v. City of Warren*, 467 F.3d 525, 526 (6th Cir. 2006) (citation omitted). "Excusable neglect [is] a strict standard which is met only in extraordinary cases." *Id.* (citation omitted). Moreover, "[i]gnorance of the rules or mistakes in construing the rules do not usually constitute excusable neglect." *Id.* at 527 ("Furthermore, mistakes by those who proceed without counsel are not necessarily excusable") (citation omitted). If either good cause or excusable neglect are satisfied, a district court "may" extend the time to file a notice of appeal by a

---

[2] The Court notes that under Rule 4(a)(6), "a district court [may] reopen the time to appeal for a maximum of 14 days if the moving party did not receive notice of judgment pursuant to Federal Rule of Civil Procedure 77(d) within 21 days of the entry of that judgment." Fed. R. App. P. 4(a)(6). However, this rule is inapplicable here as Shannon does not contend that she did not timely receive notice of the entry of dismissal in this case.

maximum of "[thirty] days after the prescribed time or [fourteen] days after the date when the order granting the motion is entered, whichever is later." Fed. R. App. P. 4(a)(5)(A), (C).

While Shannon's motion to appeal was filed within 30 days after the time to appeal expired, the Court finds that she has not shown excusable neglect or good cause for failing to timely appeal. The filing of a notice of appeal is a "modest task." *Isert v. Ford Motor Co.,* 461 F.3d 756, 758 (6th Cir.2006). Shannon's pro se status is not, by itself sufficient good cause to justify an extension, and her general assertions in her motion that she has endured "unstable housing" since her termination, does not currently have a vehicle, has had to rely on family members and friends for financial support, and has not had stable employment are also insufficient to establish good cause or excusable neglect for missing the appeal deadline. Shannon stated that she was in fact at work at the time of the settlement negotiations and she otherwise does not explain how she was "prevented" by forces beyond her control from filing a timely notice of appeal. Without such a demonstration, Shannon cannot establish good cause or excusable neglect for extending the appellate filing deadline. Accordingly, her request to extend the appeal deadline will be **DENIED.**

16

## IV. CONCLUSION

For the reasons set forth above, Plaintiff Charkeia Shannon's motion for reconsideration of the parties' Settlement Agreement and motion to appeal, ECF No. 21, is **DENIED.**

**IT IS SO ORDERED.**

Dated: November 10, 2025   /s/Terrence G. Berg
                                                HON. TERRENCE G. BERG
                                                UNITED STATES DISTRICT JUDGE